UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
JACQUELINE WADE,                                            :
                                        Plaintiff,          :
                                                            :       11 Civ. 05278 (LGS)
                -against-                                   :
                                                            :       OPINION & ORDER
THE NEW YORK CITY DEPARTMENT OF                             :
EDUCATION and THE CITY OF NEW YORK,                         :
                                        Defendants.         :
                                                            :
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/10/14

LORNA G. SCHOFIELD, District Judge

Plaintiff Jacqueline Wade brings claims for employment discrimination against the New York City Department of Education and the City of New York.  Ms. Wade brings claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"); the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12101-12213; the Age Discrimination in Employment Act of 1976, (the "ADEA"), 29 U.S.C. §§ 621-634; the New York State Human Rights Law, New York Executive Law §§ 290 et seq. (the "NYSHRL"); and the New York City Human Rights Law and New York Administrative Code §§ 8-101 et seq. (the "NYCHRL").

Plaintiff alleges discrimination on the basis of her race, color, national origin, age, and disability.  Plaintiff alleges that based on this discrimination she faced unlawful termination, a failure to promote, unlawful retaliation, a failure to accommodate her disability, sexual harassment, and unequal terms and conditions of her employment.  Defendants move for summary judgment as to all claims.

## I. Background and Facts

### A. Timeline of Events

Plaintiff is an African-American woman, born on August 12, 1961. She is an accomplished actress who has performed in a number of plays and is a member of the Screen Actors Guild. She was hired as a probationary, non-tenured drama teacher for I.S. 109, located in Queens on August 31, 2007. The principal at I.S. 109 was Miatheresa Pate-Alexander. Ms. Pate-Alexander had replaced principle Shango Blake, who had been removed as principal of the school when he was accused of punching a student and misallocating over $30,000.

Plaintiff's first issue with Principal Pate-Alexander surrounded Plaintiff's attempts to get health insurance. Plaintiff filled out paperwork to receive health benefits on September 26, 2007, but had trouble receiving her health insurance. Plaintiff was enrolled in the Department of Education insurance program in or around November 2007. Plaintiff claims that in attempting to get her health benefits, she informed Principal Pate-Alexander that she needed health insurance because she was a "cancer patient." Plaintiff testified at her deposition that Principal Pate-Alexander initially was helpful in helping her get health benefits, but that once she disclosed the cancer, Principal Pate-Alexander began to discriminate against her and considered her a liability.

On December 6, 2007, Plaintiff is alleged to have told a student's parent that her child should be taken to the hospital for evaluation after the child was spit on by another student. Principal Pate-Alexander issued Plaintiff a disciplinary warning for making the statement to a student's parent.

On January 14, 2008, Plaintiff sent a letter to Assistant Principal Karleen Comrie, stating that on January 11, 2008, "Student A" had become disruptive in her class, and was verbally abusive. At the direction of Principal Pate-Alexander, Assistant Principal Comrie investigated

the incident. As part of the investigation, Assistant Principal Comrie obtained written statements from fourteen students who were in the class. Students reported that Plaintiff said "fuck you" to Student A, shook her breasts in his face, and made other inappropriate comments to Student A. Plaintiff vigorously disputes the students' version of events. Plaintiff testified that she believed the students conspired to get her fired, that they made up the events in order to do so, and that they even called her at home to brag about having done so. On January 16, 2008, "Student B" alleged that Plaintiff attempted to coerce him into writing a statement that verified Plaintiff's account of the events of January 11, 2008. Plaintiff disputes this allegation as well.

Assistant Principal Comrie reported these incidents to the Special Commissioner of Investigation for the New York City School District, which referred the investigation to the Chancellor's Office of Special Investigations (the "OSI"). On January 31, 2008, Plaintiff was assigned to a "reassignment center" pending the resolution of allegations of corporal punishment and verbal abuse. A reassignment center is a holding center where New York City teachers accused of misconduct are reassigned pending the outcome of their investigation. Teachers receive full benefits and salaries while there.

The OSI investigated the allegations in February 2008, and interviewed Assistant Principal Comrie, Ms. Alise Williams, Ms. Brenda Fullard, and fourteen students in the class where the January 11 incident occurred. The investigator also interviewed Plaintiff in the presence of her Teachers' Union representative. On October 10, 2008, the Office of Special Investigation ("OSI") investigator issued a report that substantiated Student A's allegations and also substantiated Student B's allegations. The report recommended that the Superintendent take appropriate disciplinary action in light of its findings.

On November 7, 2008, while she was at the reassignment center, but prior to her termination, Plaintiff reported that a male co-worker pulled down his pants and exposed his buttocks to her. Plaintiff reported the allegation to the Department of Education's Office of Equal Opportunity. The allegation was unsubstantiated by the Office of Equal Opportunity. On January 20, 2009, Plaintiff made a complaint to the Office of Equal Opportunity alleging that she was retaliated against at the Reassignment Center for complaining of the male co-worker's sexual harassment. She alleged that a female coworker retaliated against her by making derogatory comments and threatening her, and that is the only retaliation Plaintiff claims to have faced for that act. The Office of Equal Opportunity investigated this complaint and found no support for the allegation that the conduct was an act of retaliation.

On March 30, 2009, Principal Pate-Alexander met with Plaintiff and her Union representative for a disciplinary conference. On April 23, 2009, Principal Pate-Alexander gave Plaintiff an "unsatisfactory" year-end rating. Principal Pate-Alexander recommended that Plaintiff be discontinued. On April 27, 2009, the Superintendent gave Plaintiff notice of his review and consideration of discontinuance. On April 29, 2009, Plaintiff submitted an accommodation request form to the Department of Education's Human Resources Division requesting a chair with lumbar support, which she testified was necessary because she had had surgery on her foot. On May 6, 2009, the Department of Education instructed Plaintiff to provide medical documentation to support her request. Plaintiff testified at her deposition that she believed she responded to that request denial. On May 27, 2009, Plaintiff was discontinued.

On March 23, 2010, exactly 300 days after she was terminated, Plaintiff completed an Intake Questionnaire with the Equal Employment Opportunity Commission ("EEOC"), alleging retaliation and discrimination on the basis of race, sex, age, and disability, but not national origin

4

or color.  On April 29, 2010, Plaintiff filed a Charge of Discrimination with the EEOC, which also did not allege discrimination on the basis of national origin or color.

**B.  Plaintiff's Deposition Testimony**

Plaintiff testified that she had a very difficult class load, with very tough students who had a number of behavioral issues.  She further testified that the students destroyed her classroom, and that Principal Pate-Alexander had no control of the students in the school, which she attributed to Principal Pate-Alexander's lack of experience.  Plaintiff testified that the students were violent and assaulted her with impunity.  There were no other drama teachers, and Plaintiff testified that the students were sufficiently difficult that she should have had at least one other teacher helping her.

Plaintiff also described Principal Pate-Alexander's extreme concern about the school's deficit.  Those concerns led the principal to hold a meeting with the faculty where she emphasized to teachers that they should not take sick days.  Plaintiff testified that Principal Pate-Alexander was, accordingly, very tough on teachers with medical conditions.

Plaintiff was asked how she faced negative treatment because she was African-American, when Principal Pate-Alexander and other members of the administration were either Haitian, African or Trinidadian.  Plaintiff responded that "it was that and a lot of other things," including that she was a "[n]ew person there" and that "drama was not considered important or vital to the school's existence and expendable."

When asked why she filed her Complaint in this action, Plaintiff said that it was because she had been sent to the reassignment center, because she had been sexually harassed, because she was verbally abused, because she was disciplined without reason, and because her class load

was unfairly large.  Plaintiff further testified she believed Principal Pate-Alexander viewed her as a liability because she was a "cancer patient."

When asked if there was anything about her race or color that Plaintiff believed led to discrimination, Plaintiff testified that she did not know because "a lot" happened at the school. Plaintiff also testified that she believed Principal Pate-Alexander treated men better and helped them more, but did not point to any specific examples.  When asked why Plaintiff believed Principal Pate-Alexander had been unfair to her, Plaintiff speculated that maybe it was national origin, but that she did not want to say it was because of her race.

When asked why she believed she was discriminated against on the basis of age, Plaintiff testified that she believed Principal Pate-Alexander had an easier time with young employees because she was young, and because they made less money.  Plaintiff testified she believed she was sent to the reassignment center because of her age, and she identified three other teachers her age who were also were ill or disabled that were sent to the reassignment center or terminated.

Plaintiff testified that part of the reason she was sent to the reassignment center and eventually terminated was because of financial pressure.  Plaintiff testified that two other I.S. 109 employees were assigned to the reassignment center while she was there: a dance teacher who was African American and an "older Jewish" man.  When Plaintiff was asked which younger teachers were treated better than older teachers, she testified "anybody who got paid less than $40,000."

Plaintiff testified at length that Principal Pate-Alexander was biased generally against those teachers with disabilities.  When asked why, Plaintiff explained that if the teachers were absent or ill, then Principal Pate-Alexander could not afford a substitute teacher because of the

6

deficit.  Plaintiff also felt that her cancer diagnosis made Ms. Pate-Alexander uncomfortable.

Finally, Plaintiff testified at her deposition that she believed she faced personal discrimination:

> Discrimination can also be about what you do, because I definitely was discriminated against because I was in the arts, okay, because what I found out, that a teacher before me, a music teacher had been in the reassignment center, the art teacher had been threatened to be thrown in the reassignment center, and I ended up in the reassignment center, and then the dance teacher, so there was definitely discrimination towards the arts right there. And there was definitely discrimination towards people who were nontenured, and if you were perceived to have a disability, definitely discrimination on how you were treated, versus if you were tenured and possibly have cancer; no, you wouldn't have ended up with [an unsatisfactory rating].

## II. Legal Standard

The standard for summary judgment is well established.  Summary judgment is appropriate where the record before the court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.56(a).

The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  Fed. R. Civ. P. 56(c); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002).  The court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008).

If the non-moving party has the burden of proof on a specific issue, the moving party may satisfy its own initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim.  *See, e.g.*, *Celotex,* 477 U.S. at 322-23;

*PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).  In other words, summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

If the moving party carries its initial burden, then the non-moving party bears the burden of demonstrating a genuine issue of material fact.  *See, e.g.*, *id.* at 322; *Beard v. Banks*, 548 U.S. 521, 529 (2006); *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001).  The non-moving party cannot "rely merely on allegations or denials" of the factual assertions of the moving party.  Fed. R. Civ. P. 56(e)(2); *see, e.g.*, *Amaker v. Foley*, 274 F.3d 677, 680-81 (2d Cir. 2001).  Moreover, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."  *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

In addition, the Court is mindful that where, as here, a party appears pro se, courts are required to broadly construe pro se pleadings and interpret them "to raise the strongest arguments that they suggest."  *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir. 1996).

**III. Discussion**

**A.  Claims Against New York City**

The City of New York moves for summary judgment as to all claims against it, arguing that it is an improper party to the action.  Because the Department of Education and the City of New York are separate legal entities, and all the allegations of wrongdoing pertain to agents of the Department of Education and not City, the motion is granted.

The Department of Education and the City of New York are separate legal entities.  *See Linder v. City of New York*, 263 F. Supp. 2d 585, 590 (E.D.N.Y. 2003); *Marrero v. City of New York*, No. 02 Civ. 6634, 2004 WL 444548, at *2 (S.D.N.Y. Mar. 10, 2004).  The City is not

responsible for the act of a separate legal entity or its employees.  *See Marrero*, 2004 WL 444548 at *2; *see also Perez ex rel. Torres v. City of New York*, 837 N.Y.S.2d 571 (1st Dep't 2007); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 248 (E.D.N.Y. 2012) *aff'd*, 713 F.3d 163 (2d Cir. 2013).  Neither the Complaint nor any of the other materials before the Court on this motion include allegations against agents of the City of New York.  Consequently, all claims against the City of New York are dismissed.

The Court now addresses claims against the remaining Defendant, the Department of Education.

## B. Timeliness of Title VII, ADEA, and ADA Claims Arising Out of Pre-Termination Conduct

Defendant moves for summary judgment as to all Title VII, ADEA, and ADA claims based on conduct that occurred prior to Plaintiff's termination, including Plaintiff's claim of sexual harassment and failure to accommodate her disability.  Because conduct that occurred more than 300 days before Plaintiff filed her EEOC Intake Questionnaire is considered untimely, summary judgment is granted as to all claims that occurred prior to Plaintiff's termination.

Title VII, the ADEA, and the ADA require a Plaintiff to file a claim with the EEOC within 300 days of an alleged adverse action.  *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996) (Title VII); *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999) (ADA); *Hodge v. N.Y. Coll. of Podiatric Med.*, 157 F.3d 164, 166 (2d Cir. 1998) (ADEA).  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  "Each discrete discriminatory act starts a new clock for filing charges alleging that act."  *Id.*

Plaintiff filed her Intake Questionnaire with the EEOC on May 27, 2010, exactly 300 days after her termination. Plaintiff's sexual harassment claim is based upon a single incident that occurred on November 7, 2008. The latest date on which Plaintiff could claim her employer failed to accommodate her disability was May 1, 2009, when Plaintiff was informed that she would need to provide more medical information regarding her injuries. *Troeger v. Ellenville Cent. Sch. Dist.*, 523 F. App'x 848, 851 (2d Cir. 2013) (discrete act of denying accommodation triggers statute of limitations). Plaintiff's claim for unequal terms and conditions of her employment could have been based on her assignment to the reassignment center, but that event occurred significantly more than 300 days before she filed her EEOC Intake Questionnaire.[1] *See Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (change in terms and conditions of employment is "one which is more disruptive than a mere inconvenience or an alteration of job responsibilities"). Plaintiff's claim for retaliation arising out of the January 20, 2009, incident with her coworker is also time barred, as it occurred over 300 days before she filed her EEOC Intake Questionnaire. Plaintiff's failure to promote claims are also untimely as any promotion decision would have been made prior to her termination, and therefore over 300 days before she filed her EEOC Intake Questionnaire.

To the extent Plaintiff's Complaint can be read to raise a hostile work environment claim, which it does not, those claims also would be time barred as there are no alleged acts that created a hostile work environment that occurred within 300 days of filing her EEOC complaint. *See Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134 (2d Cir. 2003).

Because the events underlying Plaintiff's reassignment, denial of accommodation, and sexual harassment claims each occurred more than 300 days prior to May 27, 2010, when

---

[1] Plaintiff's unequal terms and conditions of employment claim also fails on the merits for the reasons stated in Section F, *infra*.

Plaintiff filed her Intake Questionnaire with the EEOC, summary judgment is granted as to each claim.

**C.  Timeliness of NYSHRL and NYCHRL Claims**

In general, there is a three year statute of limitations for claims under the NYSHRL and the NYCHRL.  N.Y. C.P.L.R. 214(2); N.Y.C. Admin. Code § 8–502(d).  New York law provides for a one-year statute of limitations for claims against schools, school districts, and boards of education.  N.Y. Educ. Law § 3813(2–b); *Sotomayor* 862 F. Supp. 2d at 249.  Plaintiff brought this action on July 19, 2011, more than one year after she was terminated.  Accordingly, her claims against the Department of Education under the NYSHRL and NYCHRL are time-barred.

Plaintiff's only remaining claims arise out of her termination under Title VII, the ADEA, and the ADA.  However, the Court will first briefly address the merits of Plaintiff's retaliation and failure to promote claims arising under Title VII, the ADEA, and the ADA.

**D.  Retaliation Claims Under Title VII, ADEA, and ADA**

Plaintiff brings claims for retaliation under each of her theories of discrimination.  Defendant moves for summary judgment on Plaintiff's retaliation claims.  Because Plaintiff can point to no adverse employment action that resulted from her participation in a protected activity, summary judgment is granted on all retaliation claims.

Plaintiff repeatedly testified that actions taken by the school and the Department of Education against her were "retaliation."  To establish a prima facie claim of retaliation, a plaintiff must show: "(1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action."  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010).  "The term protected activity refers to action taken to

protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000).

The only protected activity Plaintiff engaged in prior to her termination was her sexual harassment complaint. Plaintiff points to negative treatment she encountered from coworkers as a result of her sexual harassment complaint, but points to no adverse employment action that resulted from her sexual harassment complaint. Accordingly, there is no evidence that could support a finding of retaliation, and summary judgment is granted on all retaliation claims brought by Plaintiff.

**E.  Failure to Promote Under Title VII, ADEA, and ADA**

Defendant moves for summary judgment on Plaintiff's failure to promote claim. Because Plaintiff points to no facts that could allow a reasonable juror to return a verdict in her favor, Defendant's motion is granted.

To establish a *prima facie* case of a discriminatory failure to promote, a plaintiff ordinarily must demonstrate that: "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004) (internal quotation marks omitted). Plaintiff neither alleged nor put forward any facts that she applied for a promotion. Accordingly, summary judgment is granted on Plaintiff's failure to promote claims.

**F. Title VII Claims Arising Out of Plaintiff's Termination**

Defendant moves for summary judgment on Plaintiff's Title VII claims arising out of her termination. Because Plaintiff cannot create an inference of discrimination, summary judgment is granted on Plaintiff's Title VII claims.

Courts analyze claims of disparate treatment in violation of Title VII under the three-part burden-shifting framework of *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973). *See Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006). Under this framework, first, the plaintiff must establish a prima facie case of sex discrimination by demonstrating: "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802).

"A showing of disparate treatment—that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (internal quotation marks omitted).

Second, if the plaintiff succeeds in establishing a prima facie case, then the burden shifts to the defendant to provide "a legitimate, non-discriminatory reason for the employment action." *Weinstock*, 224 F.3d at 42. If the defendant succeeds in offering a legitimate, non-discriminatory reason, then "the presumption of discrimination arising with the establishment of the prima facie case drops from the picture." *Id.*

Third, the burden shifts back to the plaintiff to come forward with "sufficient evidence" that the non-discriminatory reason offered by the defendant is "a mere pretext for actual discrimination." *Id.* (internal quotation marks omitted).

13

Plaintiff is an African-American woman and a member of a protected class under Title VII. Her claims of discrimination on the basis of national origin and color were not raised in her EEOC Intake Questionnaire. She clearly faced an adverse employment action when she was terminated. A reasonable juror could conclude that Ms. Wade was a generally satisfactory employee, in a very difficult situation, and that the students in her class made up the story that ultimately resulted in her termination. *See Ruiz*, 609 F.3d at 492 ("[W]hether misconduct precludes a finding that a plaintiff is qualified for his position depends both on the kind of misconduct, i.e. whether it speaks to the plaintiff's competence and job skills, and the seriousness of the misconduct, i.e. whether in the aggregate plaintiff still performed his job satisfactorily." (internal quotation marks omitted)).

Plaintiff cannot, however, create an inference of discrimination. "A plaintiff may raise [an inference of discrimination] by showing that the employer subjected [her] to disparate treatment, that is, treated her less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); *see also Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir.1999) (inference of discrimination arises when individual of one race is treated less favorably than those of another race who are similarly situated); *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997) (a woman may prove inference of discrimination by showing similarly situated men treated differently).

Plaintiff speculates that Principal Pate-Alexander treated male employees better, but points to no concrete facts that could allow a reasonable juror to infer discrimination. *See McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("speculation alone is insufficient to defeat a motion for summary judgment"). Plaintiff also speculates that employees of Haitian descent were treated better than U.S.- born employees, but points to no facts to show

that she was treated differently than other similarly situated employees.  She points to no facts relating to her race that could lead to an inference of discrimination, and explicitly denied that race was the basis of any discrimination against her.

Even assuming, *arguendo*, that Plaintiff could establish a prima facie case of discrimination, Defendant has given a legitimate nondiscriminatory explanation for her termination.  An OSI investigator substantiated allegations that Plaintiff had cursed at students, shook her breasts in his face, and attempted to coerce a student into making a false statement regarding the other allegations.  These events, according to the employer, led to her termination.

Once a defendant provides a legitimate, nondiscriminatory reason for a plaintiff's termination, the burden shifts back to the plaintiff to show that the reason was merely pretext. *See Weinstock*, 224 F.3d at 42.  That Plaintiff disputes the accuracy of the nondiscriminatory justification for her termination is not enough to establish pretext.  *See McPherson*, 457 F.3d at 216 ("In a discrimination case, however, we are decidedly not interested in the truth of the allegations against plaintiff.  We are interested in what *motivated* the employer . . .") (emphasis in original) (internal quotation marks omitted); *Shabat v. Billotti*, 108 F.3d 1370, at *2 (2d Cir. Mar. 18, 1997) (unpublished table opinion) ("[T]he fact that an employee disagrees with an employer's evaluation of him does not prove pretext." (internal quotation marks omitted)); *Miller v. Nat'l Ass'n of Secs. Dealers, Inc.*, 703 F. Supp. 2d 230, 247 (E.D.N.Y. 2010) ("The relevant inquiry is not whether the performance-based justification for plaintiff's termination articulated by defendant is accurate or fair, but whether plaintiff can show any evidence that it was not the actual justification.").

Plaintiff has come forward with no evidence to establish that the reasons for her termination were merely pretext for a discriminatory reason.  Indeed, the evidence in the record

indicates that the investigation which led to her eventual termination was initiated by a letter sent from Plaintiff to Assistant Principal Comrie. Plaintiff has failed to raise a genuine issue of disputed fact to defeat Defendant's Motion as to her claims discrimination under Title VII, and accordingly, summary judgment is granted as to those claims.

## G.  ADEA Claim Arising Out of Plaintiff's Termination

Defendant moves for summary judgment on Plaintiff's claim for age discrimination. Plaintiff has presented no facts that would allow a reasonable juror to find in her favor, and accordingly summary judgment is granted as to Plaintiff's age discrimination claims.

The Second Circuit applies the *McDonnell-Douglas* framework to age discrimination under the ADEA. *Gorzynski*, 596 F.3d at 106. Plaintiff must show "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Id.* In *Gross v. FBL Fin. Servs.*, the Supreme Court held that under the ADEA, a plaintiff must prove that age was the "but-for" cause of her adverse employment action. 557 U.S. 167, 176 (2009); *see Gorzynski*, 596 F.3d at 106 (applying *Gross* to Second Circuit law and maintaining use of *McDonnell-Douglas* burden shifting framework). While Plaintiff may have been able to show that age discrimination was a motivating factor in her termination, she cannot show that it was the "but-for" cause of her termination, and therefore, cannot establish a prima facie case.

Plaintiff cannot establish a prima facie case under the *McDonnell-Douglas* framework. While she is a member of a protected class under the ADEA as she was over 40 at the time of the incident, she suffered an adverse employment action, and she arguably was satisfactory in performing her job duties, Plaintiff points to no evidence that could lead a reasonable juror to

16

infer discrimination.  Plaintiff testified at her deposition that because Principal Pate-Alexander was a very young principal, she may have acted more favorably towards younger teachers.  Plaintiff also testified that most of the teachers sent to the relocation center or who were "excessed" were older.   She also speculated that the relatively lower salary of younger teachers may have played a role in better treatment for younger teachers.

Terminating an employee for one with a lower salary in and of itself is not a basis on which to establish an age discrimination claim, even if age and salary are largely related.  *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 612 (1993) (correlation between age and years of service are not sufficient to establish an age discrimination claim); *MacKinnon v. City of New York Human Res. Admin.*, 441 F. App'x 16, 17 (2d Cir. 2011) ("An employment decision motivated by pension costs, even when strongly correlated with age, is not an ADEA violation.").  The Supreme Court eliminated "mixed-motive" analysis in *Gross*, and a plaintiff "must show that that age was the 'but-for' cause of the challenged adverse employment action" and not just a contributing or motivating factor.  *Gross*, 557 U.S. at 178-179.  Plaintiff explicitly testified that salary and the Principal's view towards the arts were contributing factors to any adverse action.  Accordingly, she cannot establish a prima facie case of age discrimination because she cannot establish that her age was the but-for cause of her termination.

Even assuming, *arguendo*, Plaintiff could put forward a prima facie case of age discrimination, Defendant proffered a legitimate, nondiscriminatory explanation for her termination.  Plaintiff is unable to show that Defendant's legitimate nondiscriminatory explanation for her termination was pretextual, and certainly has put forward no evidence that her age was the "but-for" cause of her termination.  Accordingly, summary judgment is granted as to Plaintiff's age discrimination claim.

**H.  ADA Claim Arising Out of Plaintiff's Termination**

Defendant moves for summary judgment on Plaintiff's ADA claim arising out of her termination on the basis of a disability.  Because cancer, without more, does not qualify as a disability under the ADA, summary judgment is granted.

While Plaintiff's pre-termination disability claims arose out of Defendant's failure to accommodate her foot injury, Plaintiff's termination claim arises out of her "perceived disability" of cancer.  "Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court" in *McDonnell Douglas.  McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009).  To establish such a case a prima facie case, a plaintiff must show that "(1) [her] employer is subject to the ADA; (2) [she] was disabled within the meaning of the ADA; (3) [she] was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [she] suffered adverse employment action because of [her] disability." *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001).

Plaintiff has not stated a prima facie case of discrimination on the basis of a disability.  The employer does not dispute that it is subject to the ADA.  Plaintiff could prove that she was otherwise qualified to perform her job, as noted above.  Finally, Plaintiff can show that she suffered an adverse employment action.  Moreover, Plaintiff's testimony is strongest in raising an inference of consistent discrimination against individuals with disability at I.S. 109.  Plaintiff has not shown, however, sufficient facts that a reasonable juror could conclude she was disabled within the meaning of the ADA.

A person is disabled within the meaning of the statute if that person has "a physical or mental impairment that substantially limits one or more major life activities," a "record of such

impairment," or is "regarded as having such an impairment." 42 U.S.C. § 12102(1).  Major life activities include "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, [and] breathing[.]"  29 C.F.R. § 1630.2(i)(1)(i).  The impairment must be "permanent or long-term" to be "substantially limit[ing]."  *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 196 (2002) (*superseded on other grounds by statute*, ADA Amendments Act of 2008, Pub. L. 110–325, 122 Stat. 3553).

Ms. Wade was diagnosed with breast cancer in 1989.  She had a mastectomy the same year, followed by chemotherapy from 1989 to 1990.  This is no doubt a difficult and traumatic experience.  The alleged wrongdoing in this case occurred between 2007 and 2009.  Plaintiff must put forward evidence that she had, has a record of having, or was regarded as having, a permanent or lasting disability that "substantially limits" a "major life activity."  Plaintiff testified that her cancer made Principal Pate-Alexander uncomfortable, but Plaintiff put forward no evidence of any restriction to any major life activity.  Accordingly, Plaintiff cannot establish that she was disabled under the ADA.

Assuming *arguendo* that Plaintiff is able to establish that she did have a disability under the meaning of the ADA, Defendants have offered a legitimate nondiscriminatory reason for her termination.  Plaintiff has put forward no evidence that Defendant's explanation for her termination was merely pretext.  Accordingly, summary judgment is granted as to Plaintiff's claim for disability discrimination arising out of her termination.

## IV. Conclusion

Defendants' Motion for Summary Judgment is GRANTED in its entirety.  The Clerk of Court is directed to terminate the motion at Docket #49 and close this case.

Dated: March 10, 2014
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE